Environmental Protection Agency, and it's neither here nor there, but when you have to have an entire page glossary for your acronyms, I think you have too many acronyms. That's just my opinion, not speaking for anyone else. All right, I'll let you all have a chance to sit down and then we'll get started. Well, the lone figure there. Council, Mr. Clark-Leach. Hey, please, the Court. My name is Gabriel Clark-Leach. I'm here on behalf of petitioners. I'd like to reserve five minutes for rebuttal. My time today, I'd like to talk about two points. So first, Exxon's Title V permit must identify state law requirements that were not established pursuant to federally approved programs as state-only requirements. And EPA has already decided that Exxon's state-only permit designated as PAL-6 is a state-only requirement that does not reflect federal Clean Air Act requirements. What's the actual permit that we're concerned with here? Is it PAL-6 or is it the 2013 permit that has a six-digit number that I can't remember, but it's an ethylene permit? So there are two different permits at issue in this case. PAL-6 is a different permit. It's a permit that says it establishes limits that say when projects at the plant. That's the 2005 permit. I don't mean to interrupt you, but I know there's lots of issues in limited time. So that's the 2005 permit. Correct, and 102-982 is the... Right, I think of that as the ethylene permit because I can't remember numbers. That's a good... So the ethylene permit, when was that issued? I believe that was issued in 2014. 2014. Now, is that after the EPA approved Texas's PAL permitting process? It was the same year. I'm unclear whether or not it was before or after, but it's a matter of law. I don't think it really matters. It doesn't really matter because Texas's PAL-6 permit was issued prior to that approval and it wasn't issued pursuant to the rules that were actually approved. So the rules that were approved, I mean the rules that were applied to establish the limits in PAL-6 were not the rules that EPA approved. You know, I realize that technical requirements are really important and I'm not questioning that. What practical difference does this make? If we were to rule in your favor, what practical difference is it going to make in terms of Exxon polluting the air? Yes, Your Honor. So petitioners provided evidence that EPA has not contested that the particulate matter limit, one of the limits in the permit, is nearly 100 times higher than federal law allows. And that means that Exxon is allowed to increase emissions from its existing source or build new facilities that increase emissions of this pollutant without triggering or complying with the same laws that everyone else has. So as I understood your answer to Judge Haynes, is it your view that the Title V permit process ought to result in higher limits for the Baytown facility? Our position is that the Title V process should identify the federal requirements that actually apply to the source. But if you get what you want, you're saying Exxon needs the expansion has to be subject to a more stringent limit. Maybe, Your Honor. So we are I thought it was undisputed that Title V does not impose substantive new requirements. The regs say that. That's correct, Your Honor. Okay. So how could a Title V permit process result in Exxon being subject to more stringent? I'm not saying they shouldn't be, but I'm saying how could it occur through a Title V permitting process as opposed to a Title I process? Yes, Your Honor. So our argument in this case with respect to the expansion permit is that Exxon never applied to federal tests to decide whether or not it's a major or minor modification. So our argument is that Title V permit needs to establish a compliance schedule, which is required by Title V, to make sure Exxon complies with an applicable requirement as part of Title I. So Title V is meant to ensure compliance with Title I requirements if Exxon has never I thought Title V was meant to simply put everything in one document. But what the everything is comes from elsewhere. That is a big part of it, Your Honor. But when Congress established Title V, one of the problems is that there was widespread noncompliance with Clean Air Act requirements and confusion in the courts about which requirements actually applied to sources. So part of the purpose of Title V is to clarify and resolve disputes about what the the Clean Air Act Bible, if you will, that everyone looks to to understand what the obligations are under federal law. So if you have a permit, like in this case PAL 6, where EPA says maybe it's a state law permit, maybe it's a federal permit, if you want to resolve this question, you have to wait for Exxon to rely on it and then sue them in federal court for violating the Clean Air Act. Until this additional permit, they were not emitting anything that caused the PAL 6 to come into play. In other words, they were complying with federal requirements? Right. So PAL 6 is basically, it comes into play when Exxon wants to build a new source. Or if Exxon has built a new source without going through federal new source review, if they emit more than they thought they would and exceed the limits in this PAL permit. But this was an existing place? Correct. So I'm asking, up until this whole Title V thing, was Exxon complying with federal law in this facility? No, Your Honor. Our contention is that Exxon violated federal law by constructing this facility and determining under the federal test whether it triggered new source review. There's a state process that has been approved by EPA for you to make that argument, right? Could you say that again? There's a state process, there's a state permitting process for you to make that contested, to make the contested case that in fact the expansion permit is not compliant with the CAA?  What about the state, what about the contested hearing process that you did go through, that you lost, and then you didn't seek state judicial review? That's correct. So Texas has a federally approved permitting program for construction permits. But Texas also has its rules for construction permits that EPA hasn't looked at or approved. And there's no requirement in the state rules that are applied in those cases by EPA. So once you get, so the state can issue a state permit without ever considering whether or not it complies with federal requirements, because they just aren't required, they aren't applying those requirements to issue the permit. And that's why Title V is so critical. That's the point at which EPA can look at the permit decisions and say, does this reflect requirements that we have approved Texas to implement as part of the Clean Air Act, or are these just additional requirements that Texas has freedom to act to implement? I thought the additional requirements could be stricter, but not looser. So Section 116 says they can't be more or less stringent than specific standards. Right. So we're not just free to say, you know what, pollute at will, have a nice day. They have to, the minimum is the federal. The state could make it more, could say we really want clean air in Texas, so we're really going to, you know, put the hammer on these companies. But I didn't understand them to be able to do a looser standard. That's what you seem to be saying. Well, the problem, Your Honor, is that until the state submits the program to EPA, there's no process for EPA to actually make the determination whether or not it is more or less stringent. And the Clean Air Act says until EPA has to think that it's, I mean, the state can't say, well, you know what, we just don't really like these federal standards, we're going to make them looser. Right. They may not manage to meet the federal standards. I understand this is complicated stuff. But they can't be saying, I mean, they have to think they're at least meeting the standards, right, or am I? The federal standards do not give states discretion to make lighter, looser standards. What they do allow is for states to develop programs that haven't been approved and then seek approval for those programs. Like the PAL program? That's correct. But wasn't the PAL program approved by the feds in 2012 or 2013? It was, I believe, in 2014. And that's why I asked my first question. The permit at issue here is the ethylene permit to allow the expansion project, right? And that came out through the state process in 2013, 14? 14, I believe, Your Honor. So maybe I can reframe this a little bit because we're not talking about the text of the regulations yet, but let's try to do that. What's at issue here is whether applicable requirements have been included in Title V, in the Title V permit. Correct, Your Honor. Whether it hasn't been. And so that's defined in the regs, right? Pardon? That's defined in the regs, what an applicable requirement is. Correct, Your Honor. Okay, that's 70.2. Yes, Your Honor. All right, so the one I think is applicable is the second definition. Yes, Your Honor. All right, so that says any term, an applicable requirement is any term or condition of any pre-construction permits issued pursuant to regulations approved or promulgated through rulemaking under Title I. Correct, Your Honor. So my question is, is the permit that we're talking about, the ethylene permit, a term or condition of any pre-construction permit that was issued pursuant to regulations approved or promulgated through rulemaking under Title I? So, Your Honor, no. Why not? So we're not, just to be clear, we're not just focusing on the ethylene permit. The PAL-6 permit is just important to us because it allows other permits like the ethylene permit to be issued in the future. But the answer to your question is no, because Texas and Exxon relied upon PAL-6, the state-only permit, rather than the test in federal law to establish what kind of authorization they needed to build this plant. So they relied on state law. That's what the regulation directs my attention to. It directs my attention to any term or condition of any pre-construction permit, the ethylene permit, issued pursuant to regulations approved or promulgated through rulemaking under Title I. Correct. And I thought that the EPA approved Texas PAL regulations in 2012, that process. Correct. But the ethylene expansion permit was not issued pursuant to those PAL rules. The PAL rules don't actually apply to authorized construction of any new facility. Let me ask you this, just to bring it back from the text of the regulations. We also have an interpretation by the EPA in 2017. This is the, what is it called, the Hunter? The Hunter, yes, Your Honor. The Hunter, where they, you know, it's very long, I read it, where they explain, hey, we're changing course. Yes, Your Honor. Right? We think that EPA has drifted away from the original understanding of Title V, and that happened in the 90s, and now we're changing course to go back to the original. Why aren't we just simply saying whether that's arbitrary and capricious by the EPA? In other words, were they arbitrary and capricious in saying, look, we went off track for a decade, now we're going back to the original, we've got scads of reasons provided in the rule for why we're doing that? So we do make that argument, that the Hunter policy is, in fact, arbitrary and capricious. And we do point out... So first, EPA in its brief cites the preamble to its proposed rulemaking, the first Title V rulemaking, five times for the proposition that their original understanding was pre-construction permits go into Title V permits without any further review. What EPA does not tell this Court is when they finalized those rules, they expressly rejected that proposition. They said that construction permits must be subject to EPA review, even if they were already subject to Title I process, because most states like Texas, their construction permitting rules do not provide for EPA review consistent with Title V. So you're saying they're really not returning to the original understanding. Absolutely, they are not. If we were to conclude that both the Hunter and the pre-Hunter version of the world were reasonable interpretations of the rule, would we not be bound to give deference, even if it's Skidmore, to the current version? I mean, these are the experts. My colleagues might be experts in environmental law. I'm not going to pretend to be. And these are the experts, and they say, here's our view. And if both views are reasonable, pre-Hunter and Hunter, then shouldn't we defer to that? No, Your Honor, because as we explain in our brief, the Hunter argument doesn't actually apply to the facts of this case. So EPA says the Hunter argument is we are required to put Exxon's construction permit terms into the Title V permit because applicable requirements as we define them include the terms of construction permits. But the premise of our whole petition is that PAL 6 and the expansion permit were not issued pursuant to Federal requirements. Therefore, under EPA's definition, they are not applicable requirements, and EPA's argument that they should be included does not apply. Right or wrong, it doesn't apply to the facts of this case. Okay, that's separate from what I asked. I'm sorry, Your Honor. You know, you can make the argument that Hunter doesn't apply, and that's fine. I'm saying if the Hunter construction and the pre-Hunter construction are both reasonable, which one should we go with? Putting aside the questions, in theory, let's assume arguendo that Hunter would apply here. Arguendo. Why shouldn't we then defer to the Hunter version if they're both reasonable? Well, it's an unreasonable burden on us, Your Honor, after 20 years of consistent implementation of the pre-Hunter reading, well past the time we filed our petition, to say we should have known that they would change positions and retroactively strip us of the right that we understood we could bring to EPA at the time. But then how do you ever fix, you know, so we have en banc hearings where we overrule prior cases. Does that make us arbitrary and capricious? Our bodies rely on those cases, and then we say, you know, we got it wrong for a while. We've got to fix it. You're basically saying you have to stay off course the rest of the history of mankind because you can't fix your mistakes. You can fix your mistakes, Your Honor, but that's not what's happening here. So as I said before, EPA's original understanding is consistent with the argument we make. It's not consistent with the position they present. So it's a change. The Hunter policy is fundamentally a new articulation that doesn't actually address that novelty. I mean, it says, yes, we understand that we haven't done this recently, but in the beginning you had noticed that this was our position. This is what Title V said, but that's not true, Your Honor. Title V from the very beginning has promised petitioners that they would be able to raise concerns about whether or not construction permits incorporated into Title V permits would be subject to EPA review. Okay. You have reserved time for rebuttal. Thank you, Your Honor. Good morning, Your Honors, and may it please the Court again, Semibot for the United States EPA. With me at counsel's table are Emily Seidman and John Kralman of EPA. Your Honors, Title V of the Clean Air Act is about operating permits. When reviewing operating permits, EPA makes sure that they're appropriate, monitoring, recordkeeping, and other operating requirements. But the Clean Air Act does not require EPA, when reviewing operating permits, to reinvestigate pre-construction permits. So we just had a conversation with Mr. Clark Leach about whether EPA's current position is a return to an original understanding, a 1990-ish understanding of what Title V should include. That's what, as I understand the Hunter opinion or order or whatever it's called, that's what I understand it to say. His view is, no, that wasn't the original understanding, and therefore this Hunter policy is, we shouldn't include it. What's your response to that? Yes, Your Honor. Let me clarify some confusion there. In the proposed rule, EPA proposed that applicable requirements would be defined as terms and conditions of pre-construction permits. That's in the definition. And in the proposed rule, EPA reflected that that meant that EPA would not be second-guessing the terms of pre-construction permits. Another proposal that EPA made in the proposed rule was that states could administratively amend these Title V permits when they came up with new pre-construction permits, and they wouldn't have to go through a long review period and a petition process for that. That's a different procedure. On reflection, in the final rule, EPA said, no, we're not going to allow states to just amend their Title V permits with these new pre-construction permits without any review. There should be review. But EPA also said, we will not be second-guessing state pre-construction permit determinations during that review. So the purpose of the review of these operating permits is to make sure that there are adequate monitoring and record-keeping, those sorts of operating requirements, that will ensure that the source is actually meeting the limits in its pre-construction permit. And so that's why this review process is necessary. But if you go to the final rule, and let me specifically give you a citation here. If you go to the final rule at 57 FEDRAG 32289. This is the 1990? Yeah, this is 1992. It says, as stated in our proposed rule, the intent of this review process is, quote, not to second-guess the results of any state new source review determination. And as an example, EPA is not going to review the best available control technology demonstration, which would be part of the pre-construction permit terms. But in general, EPA is just not reviewing pre-construction permits during its operating permit review process. What about the practical issue? I mean, maybe practicality doesn't have much of a role here. But if they're being allowed to make emissions that are 100 times the federal regulations, shouldn't there be some methodology by which there could be a stop to that, or at least that that could be looked at? It seems a little bit concerning. Your Honor, there are multiple mechanisms to address this problem. Specifically, EPA has enforcement authority to sue the state. They don't seem to be real gung-ho about that. They're like, oh, I don't want any part of this. So then that's when, I mean, when EPA is, you know, busy jumping on everyone, then we don't need the EIP. But they step in when they feel that the EPA is not doing its job. And the public actually has the ability to bring enforcement suits as well under the Citizens Act. And that's what they're trying to do, in essence. Well, but there is a separate way to do that. That is an enforcement suit brought by a private party. Your argument is not through the Title V process. Right, exactly. So you're saying they have to show that they are actually doing the emissions, not just that they could. Yes, Your Honor. In the enforcement action, that's what they would have to show. In addition, we have an argument here that petitioners haven't demonstrated that the pre-construction permits and the Title V permit were wrong, even assuming you could substantively review them, because petitioners have never demonstrated that this modification is a major modification. As opposing counsel said, all they said was that the test was incorrect, but they didn't say that the results were incorrect. That's your alternative argument? That's our alternative argument. If you don't win under the Title V sort of procedural argument? If we don't win under our interpretive argument. Now, is there – I'm still having a little bit of trouble understanding what the purpose of the State proceeding that did occur was if it doesn't forestall the discussion we're having now. Maybe you can help me with that. Yes, Your Honor. So the State proceeding here was on the ethylene permit that was issued in 2014, but there could have been a State proceeding on PAL-6, which was issued in 2005. There was public notice that said that PAL-6 would be imposing federal pre-construction limits. Are you saying there is stop because they didn't do the State proceeding on the PAL-6, and there also is stop because they did do the proceeding on the ethylene? So both of them are a stop? No, Your Honor. We don't have an estoppel argument or an exhaustion argument. Our argument is just based on an interpretation of the Clean Air Act and the regulations that the appropriate way to raise substantive issues with the pre-construction permits is in the pre-construction process. And I think that counsel for Texas, as intervener, will be able to explain better the proceedings in Texas and why Texas determined that the ethylene – Well, I'm not – I don't think we're reviewing why they determined it because that wouldn't be appropriate. We're not the court of review for that. I'm wondering why that isn't some form of ratio to cotter or collateral estoppel or something. I mean, was that just a nothing? I'm just trying to understand why that process can be ignored, good or bad. Your Honor, we're not saying that that process can be ignored. We're saying that you do respect the results of it. Okay. Well, that's a – why don't you answer that then? Not every question is hostile. And the structure of the CAA envisions that state. Yes, absolutely. Because it's a cooperative federalism kind of thing. Absolutely, yes. So let me put it another way. Does the prior state proceeding estop race due to cotter or anything else, any aspect of this case, of the current case before the Fifth Circuit? Your Honor, EPA adopts the decision of the state with regards to the pre-construction permit limits. EPA does not reopen the state proceedings in this Title V permitting review. Can EIP, in essence, reopen it by coming here? That's what I'm trying to get at. No, Your Honor, EIP – Are they not bound by it? Aren't they bound by it? In the permitting context, they are bound by it, but they can still – We can do the enforcement proceedings, but we don't have that. Yes. So I feel like I'm just on another planet with you, and so maybe I'm just not asking the question well. Maybe it's a stupid question, but I still need an answer. Yes. What is the effect of the state proceeding that has occurred on this proceeding vis-à-vis the arguments they can make, if any? How's that? The arguments that they could have made in the state proceeding, the substantive arguments, they cannot make in this federal Title V permitting review process. So what are you arguing is barred by the state proceedings that's in the brief in front of us? We are arguing specifically as to this case that the argument that PAL-6 is substantively invalid and the argument that the ethylene permit is substantively invalid because of its reliance on PAL-6, those arguments cannot be raised in this Title V permitting review process. The appropriate time to raise them was during the state pre-construction permitting process. There's a footnote in the EPA's order in this case that talks about – let me see if I can find it so I'm not just shooting in the dark here. It's – sorry. Go ahead. It's in your order, which I sort of view as the district court order in this case that we're reviewing for arbitrary and capricious. At page 11, footnote 17, it says – because I was interested in what Judge Haynes was asking about as well. Okay, so they say PAL-6 allows Exxon to admit way over the limits. Where – if that's true, I don't know if that's true or not, but if it is true, I want to know, do they have the opportunity to contest that somewhere? We have here in footnote 17, the EPA observes that ExxonMobil has submitted a request to renew PAL-6. EPA expects that this renewal permit will be issued according to and must necessarily comply with the regs governing PAL permits. Explain that to me and explain whether this – and maybe I'm off on this, but is this a process through which PAL-6, if it is in fact bad, can be reviewed? Yes, Your Honor. During this renewal of PAL-6, petitioners will be able to raise in comments to this renewed PAL-6 that PAL-6 does not meet the appropriate requirements of the Texas State Implementation Plan or appropriate federal requirements. And they will go through the state process for that. And they will go through the state process for that. They'll seem to like the state process too much. And then I guess another part to that maybe is that by your refusal to object to the Title V, EPA is not saying PAL-6 is great, PAL-6 is compliant. Is that right? Yes, that's correct. You're just saying it's an applicable requirement. The permit issued pursuant to that is an applicable requirement under the regs. Yes, that's correct. You're not approving it. Yes, EPA does not approve of PAL-6. That was not the question before EPA during the Title V permitting process. So play this out for me. Again, maybe again the practicalities don't matter, but I'm trying to understand them anyway. Let's say we affirm and ExxonMobil just starts filling the air with all kinds of goo. What happens? Then an enforcement action could be brought. And all of this, the Title V and all that, none of that would matter to that? Another thing that could happen is that during this PAL-6 renewal, which is before the Texas Administrative Agency at this time, petitioners would be able to comment on that and go through an administrative review process for that. But you're saying I thought Title V was to give some framework for the company so if I'm the lawyer for ExxonMobil, I can advise them on what they can and cannot do. If you're saying Title V is irrelevant, they start spewing stuff into the air that is consistent with their Title V permit but inconsistent with what somebody else views as the actual federal regulations, they're in trouble. So then what's the purpose of this Title V document that puts everything in one place so general counsel for Exxon can say you're good, you're compliant with this document, you can start spewing this stuff in the air, just don't spew more than 100 times the federal regs or whatever it is? Your Honor, for the requirements that are actually in Title V, yes, that's true, Title V is the Bible. But there could be other requirements that apply to a source that are not in their Title V permit. For example, if there are major source requirements that apply to this source and they don't have a major source permit, EPA still reserves its enforcement authority to enforce those major source requirements which are not in the Title V permit. This has always been true. This is not a change in position. This is actually written into Title V. In the permit shield provision, EPA reserves its enforcement authority as to requirements that are not in the Title V permit. And that might be a situation here. If PAL-6 is in there, then does that not help Exxon Mobil in any future enforcement process? Not as to federal requirements that are not in the Title V permit. PAL-6 and the ethylene permit do help Exxon in terms of if they meet the requirements that are in the ethylene permit, that will show that they're meeting the minor source requirements. But major source requirements, if they're not in the Title V permit and they apply anyway, EPA can still bring an enforcement action, and you can tell that from the permit shield provision. This is just how Congress set up this system, that EPA is reviewing what's in the Title V permit, but separately, apart from its administrative authority, EPA has this enforcement authority which is broad. Thank you. Thank you, Your Honor. If there are no further questions. We've got some fast-talking colleagues here to present their petition. Three minutes each. Ms. Mitchell, talk fast, but not so fast that we can't understand this. May it please the Court. There are three reasons this Court should deny the petition for review. First, Texas administers separately its Title I pre-construction and Title V post-construction permit programs. The Title I process affords robust public participation, as was had by petitioners here who raised the same claims during that Title I process that they are now re-urging in this Court under Title V. Those claims were rejected in the Title I proceedings, and they chose not to appeal. Second, Title V is not a mechanism by which to re-examine Title I permits. Nonetheless, they waited until now to collaterally attack those permits that were previously settled. Third, if the Court adopts petitioners' view, the finality of hundreds, if not thousands, of Title I settled permits will be called into doubt, and their finality will be questioned. Texas's two-permit system will be disrupted. This can't be what Congress intended when it enacted Title V. Thus, EPA's decision to deny the petition to object was not arbitrary and capricious. The Clean Air Act authorizes the states to maintain separate programs for Title I and Title V permitting, allowing efficient and clear processing of permits in the two-permit system. Title I, as I mentioned, provides notice, comment, and sometimes the opportunity to fully litigate a Title I pre-construction permit that's before the agency. Title I is a separate permitting regime completely from that, and it was established by Congress, and I think, Judge Haynes, you hit on this before. TCEQ's job under Title V is to incorporate the terms and conditions of the Title I pre-construction permits that have already been issued into the title. Isn't ExxonMobil allowed to rely on that and what they do? Yes, Your Honor. Okay. Yes, indeed. And so then wouldn't that help them in an enforcement proceeding where they're accused of violating the law if they're compliant with what's in Title V? I suppose that it could, but as Ms. Bott mentioned, if there are major pre-construction requirements that have not been applied to ExxonMobil, only the minor, that's where the question comes up. The premise of the expansion permit in this case, correct me if I'm wrong, is that it's a minor. It's a minor. That's correct. Yes, it was a minor. If it turned out to be a major, if it turned out for whatever reason that it's a major expansion, it could be challenged. Is that right? That's correct. In the enforcement? That's correct, yes, Your Honor. What about this PAL-6 renewal issue? The PAL-6 renewal issue. The PAL-6 is really not what we should be focusing on today because Title V is a completely separate process. PAL-6 was a creature of the NSR program, and as the SOA, pardon me, the State Office of Administrative Hearings Administrative Law judges found. That was one acronym I knew. Good. As they found, the requirements in place at the time that EPA had already put into action were sufficient to allow states to go in and have these programs set up so long as they were in compliance with what EPA already had on the books, and PAL-6 was that, and SOA made that decision. Do you disagree with the notion that PAL-6 is allowing 100 times the emissions that federal law allows? I'll disagree with that on the premise. I'm certainly no scientist, and I can't account for all of that. But, yes, I do disagree with that, and I see my time is up. So for these reasons and those urged in our brief, we actually— And do you disagree with the premise that Texas could have approved a more lax standard as opposed to a more stringent standard than federal? No. I mean, I know Texas is a very independent place, but they do believe they have to follow federal law, right? They do follow federal law. Okay. Yes, Your Honor. Thank you. Thank you. Good to hear. Good morning, Your Honors. May it please the Court, my name is Shannon Broom, and I'm here today on behalf of the permit holder, ExxonMobil. And I wanted to highlight just two core points. The first is that petitioner and substantive claims are really meritless, and there's an extensive record on that point. I think this is a good permit imposing extensive controls on the facility, and it has been a well-controlled facility. That's why it was eligible for this permit. When you say permit, you mean the ethylene permit? The ethylene permit and PALSEX, both. They accepted extensive control requirements. So this vision of billowing smoke is not a fair one. I took issue with spew in your question. Spew goo. We don't want you to spew goo. Right. And they aren't. They are complying with very stringent controls on a wide range of emission units that they accepted voluntarily. And your view is that the permits that you just referred to qualify as applicable requirements under Section 70.2 of the CFR? The second definition. The second one, right. Yes. And that's the more specific. So the second point is that, as my colleagues have said, this is not the place to be bringing this dispute. There is Section 304 of the Clean Air Act that allows for citizen suits and extensive discovery and is certainly an avenue that they could have pursued. But petitioners are asking to have the Title V petition process do the entire work of the Clean Air Act. Title V dropped in in 1990. There was a big Clean Air Act before that. And so that is inappropriate. In terms of EPA's order, they EPA actually substantively responded to petitioners' claims and dedicated 20 percent of its order to responding to them. So to the extent that you were to go at the substantive issues, they did respond and they found appropriately that petitioners did not meet their burden. I heard you reference the increase in tons of emissions. That claim was not really substantiated in their petition. They didn't provide calculations. And if you look at Texas's record in the appendix, I think it's at 12 to 14, EPA specifically found that the facility would not be exceeding any of its emission limits and that there was not going to be an increase from PAL-6, what was allowed. And so that was the flexibility that the company bargained for in exchange for installing these very stringent controls, and they deserve the benefit of that. And just very briefly, the petitioners have failed to participate in the 2005 public comment process on PAL-6, which explicitly said that it would be federally enforceable. Then there was a 2006 public process when PAL-6 went into the Title V permit. They were nowhere to be found. 2010 public process when the permit was renewed, and they were not there. So now they come here as we want to start our facility after we've already built it and forum shop to try to stop the facility from commencing operation. They commenced operation last summer. They completed construction. And so it's unclear to me how they could sit on their hands for so many years and then expect the investment expectations, the reasonable expectations of this company who followed every rule to now be upset. Okay. Thank you for your argument. Mr. Clark-Leach, you have five minutes for rebuttal. What about that last point, you know, you let them cruise along all these years and now, bam, as soon as it's all ready to roll and apparently rolling, you want to knock them down? So that mischaracterizes our claim to the petition. So the whole idea that this is a collateral attack on the validity of these permits, it's just unfounded. So all we're asking is for EPA to identify permits incorporated in the Title V permit as state law permits. We're not asking them to invalidate these permits. We're not asking them to reopen these permits. We're not asking them to change any term or condition of these permits. And what practical effect does that have if they just added those two words or how many words it is? So it clarifies. So state law permits, they can be enforced in state court. TCEQ has authority to enforce them. But it would clarify that these permits do not define the federal obligations of Exxon to comply with the Cleaner Act, and they would tell Exxon, they would tell stakeholders like the public, EPA and the TCEQ, that Exxon needs to comply with these permits. Isn't it a little bit late 14 years later to tell them they can't rely on something? I guess that's the argument you just made. No, Your Honor. I guess I misunderstood it. I mean, how do you respond to her 05 silence, 06 silence, 2010 silence? So the question of whether or not a permit issued by the TCEQ is a federal permit or a state law permit, it's not an issue that the state considers in these contested case hearings or in state court review. They just simply look at the laws that were applied to issue the permit and see if Exxon has demonstrated compliance with them. There's no separate demonstration to say, do these laws here comply with the federal law? Are they up to the standards of the Cleaner Act? And that's because the Cleaner Act makes that EPA's job. Before EPA approves a program, Section 110K3 of the Cleaner Act says it may not be treated as complying with the act. And I want to make clear, too, that EPA says that this question we're asking, whether or not PAL-6, which is a key part of this case, and the ethylene permit or state law permits or federal law permits isn't a Title V question, ignores its own rule at 40 CFR 70.6b2 that says Title V permits have to distinguish between state-only requirements and federal requirements. And then with respect to the... You're saying that's not just a technicality that has impact. That's the question. I'm not saying technicalities don't matter. I love technicalities, but I just am wondering. Right. So, I mean, it's central. I mean, it's a formal structure, but, I mean, like cooperative federalism, it's not a mere formality. It's a balance of power that's established by the act. So EPA has the power to review state programs and say, this program does or does not meet the act. Before EPA has that opportunity, states can issue permits pursuant to rules that EPA hasn't looked at, but there's no assurance. Those rules may not be treated under the Clean Air Act as meeting federal requirements. So the basis of our claim here is that these permits were issued pursuant to rules EPA hasn't reviewed, and there's no basis for... What impact, when EPA approved the Texas PAL standard in 2012, what impact does that have on... It doesn't have any impact on this case because this permit is called a PAL permit, but it wasn't issued pursuant to these rules and its limits. We talk about the process that established the limits, and it's incompatible with the approved rules. And we did provide calculations, and we did provide evidence that the PM limit in particular, which was established after all this contested case business went down, is 1,000 tons higher as a matter of black-letter law than federal law allows. EPA doesn't say yes. It doesn't say no. It doesn't say that evidence is enough. They don't talk about it at all. And if I could address the point about the preamble where EPA said they wouldn't second-guess permitting decisions. So that's not quite right. So what they said is they wouldn't second-guess state decisions applying federal requirements like BACT. But what they did say they would do is they would look at the permits and say, did the state actually apply the federal requirement? And is that requirement, is that pollution control analysis faithfully included in the Title V permit? And we're asking basically for the same thing. We're asking EPA to look at this PAL permit and say, does it apply the federal concepts? Does it apply baseline actual emissions? Or does it apply some state analog that is not? It sounds like you want us to look at the Title V process to look at the merits of the permit. Right. So that's not correct. We're not asking EPA to second-guess whether or not Texas reached the right limits reflecting a federal standard. We're saying, did Texas apply the right standard in exercising its discretion to set a limit? If it's looking at the wrong standard, if it's looking at a State law standard that EPA has never approved, then that standard cannot be treated as complying with the Act under 110K3. Okay. May I make one more point really quickly? I think we have your argument. We appreciate it very much. We appreciate everybody's argument. And while I think there are too many acronyms in this case, I did appreciate the glossary. Thank you. If you're going to use pages and pages of acronyms, please do give us a glossary. Thank you, all sides. The case is under submission, and we're going to take a ten-minute break.